**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4586
_____

SHAD MOHAMMED ALAM,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A079-727-897)
Immigration Judge:  Honorable Rosalind K. Malloy

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 6, 2012

Before:  SLOVITER, VANASKIE, and GARTH, <u>Circuit Judges</u>.

(Filed: February 14, 2012)
_____

OPINION
_____

GARTH, <u>Circuit Judge</u>.

Petitioner Shad Mohammed Alam was deemed removable by an Immigration

Judge (IJ), who denied various applications for relief.  When Alam appealed that

determination to the Board of Immigration Appeals (BIA), his case was remanded back

to the IJ, who once again determined that he was subject to removal and not eligible for

1

relief. In a November 24, 2010 decision, the BIA dismissed Alam's appeal from that second decision of the IJ, and Alam now petitions for review of that dismissal. For the reasons that follow, we will affirm the BIA's dismissal of Alam's appeal.

I.

We write principally for the benefit of the parties and recite only the facts essential to our disposition.

Alam, a native and citizen of Bangladesh, claims that he entered the United States through Miami on November 8, 2001.

On January 31, 2002, Alam was served with a notice to appear which alleged that he was removable under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien who had entered the United States without inspection. Alam thereafter submitted applications for asylum, withholding of removal, and relief under the Convention Against Torture.[1] On May 5, 2004, after a hearing on Alam's applications, the IJ stated that she would grant his application for asylum and that she intended to issue an oral decision at a future time. On May 28, 2004, Immigrations and Customs Enforcement (ICE) filed a notice of appeal of that decision. On January 7, 2005, the IJ departed from her prior statement and issued an oral decision denying Alam's application.

Alam appealed that decision to the BIA. The BIA vacated the January 7 decision and remanded his case to the IJ for clarification of the record. During the pendency of the remanded proceedings, on November 13, 2007, Alam informed the IJ that he had

---

[1] Alam does not now appeal anything relevant to his request for relief under the Convention Against Torture, and we therefore do not address it further.

2

married a United States citizen and requested adjustment of status to lawful permanent resident on that basis.[2] At that time, the IJ instructed Alam to provide the IJ with the name under which Alam was admitted to the United States so the IJ could determine whether he had undergone the inspection required for eligibility for adjustment of status. Alam failed to provide that information.

On January 14, 2009, the IJ held a hearing on Alam's asylum application and his removability. On January 22, 2009, the IJ determined that Alam was removable as originally charged, found him ineligible for adjustment of status, and once again denied his asylum application, finding that neither Alam nor the evidence he submitted in support of the application was credible. Alam appealed that decision to the BIA, which dismissed his appeal. Alam timely petitioned this court for review.

II.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a). Where, as here, "the BIA issues its own decision on the merits and not a summary affirmance, we review its decision, not that of the IJ." Kaplun v. Att'y Gen., 602 F.3d 260, 265 (3d Cir. 2010). "Our review of the agency's legal conclusions is de novo," and we "review factual findings under the 'substantial evidence' standard." Huaw Wu v. Att'y Gen. 571 F.3d 314, 317 (3d Cir. 2009). We will therefore uphold factual determinations, including credibility determinations, if they are supported by "reasonable, substantial, and

---

[2] Alam claimed he was the beneficiary of an approved I-130 visa petition as a result of his marriage to a United States citizen.

probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (internal citation omitted).

## III.

On appeal, Alam now claims: 1) that the BIA erred in determining that there was substantial evidence to support a finding that Alam and his evidence were not credible; and 2) that the BIA improperly concluded that there was insufficient evidence to establish that Alam illegally entered the United States through Miami on November 8, 2001 with a picture substituted passport[3] and was inspected upon entry. We will address each of these contentions in turn.

## A.

Alam applied for asylum under 8 U.S.C. § 1158(a)(1), claiming status as a "refugee" under 8 U.S.C. § 1101(a)(42)(A) on the grounds that he had "a well founded fear of persecution on account of . . . membership in a . . . political group." Id. The IJ denied that application on January 22, 2009, concluding that Alam did not have any such well-founded fear, a conclusion that was wholly based on the IJ's determination that Alam was not credible. In reviewing an IJ's credibility determination, the BIA considers whether the discrepancies relied upon appear in the record, whether they provide specific reasons to conclude the witness was not credible, and whether a convincing explanation has been offered for the discrepancies. See Xie v. Att'y Gen., 359 F.3d 239, 243 (3d Cir. 2004).

---

[3] A picture substituted passport is a passport in which the photograph of the passport holder has been replaced by a photograph of a different individual who seeks to use the passport.

In reaching an adverse credibility determination and denying Alam's application for asylum, the IJ determined that Alam submitted fraudulent affidavits, that Alam had failed to list his alleged nickname in his asylum application, and that Alam's explanation for the fraudulent affidavits was unsatisfactory. Specifically, Alam claimed that he was a local leader of a minority political party in Bangladesh who would be subjected to attacks if he were to return to Bangladesh. In support of those assertions, Alam submitted three declarations purportedly from members of the same political party, all of which addressed his involvement and visibility in the party.

All three declarations submitted by Alam later proved to be forgeries; Alam does not deny this fact. Furthermore, when two of the three alleged declarants were later interviewed about Alam and his alleged involvement in Bangladeshi politics, both indicated that they did not know anyone by Alam's name. One declarant, a local leader in the party, also explicitly named another individual as having held one of the political offices at the time that Alam claimed to have held it.

Alam claimed that he did not know the affidavits were forged at the time that he submitted them to the IJ. Even assuming this to be true, the subsequent statements collected from the two alleged declarants weigh heavily against Alam's credibility. The fact that one leading member of Alam's alleged party expressly identified another individual as holding an office that Alam claimed to hold is, by itself, sufficient evidence to support the IJ's adverse credibility finding. Alam failed to explain that significant discrepancy, saying only that the declarant's statement was incorrect, and that Alam could not provide an explanation for the inaccuracy.

5

Additionally, the statements of both declarants that they did not know anyone by Alam's name weighs heavily against his credibility. In an effort to explain this discrepancy, Alam claims that these individuals would only have known him as "Zillu," an alleged nickname which did not closely resemble his name. Alam introduced the testimony of an expert witness to establish that such use of a nickname is commonplace in Bangladesh. Nevertheless, as the IJ pointed out, Alam failed to list any alternate names on his written application for asylum. When asked to explain his failure to do so, Alam testified to three things: 1) that he did not know nicknames were used in the United States; 2) that his relatives and the party leaders in Bangladesh knew him by his nickname; and 3) that he did not list his nickname on the application because his relatives and others close to him knew him as "Zillu," and not as "Alam." His testimony that his family, party leaders and others close to him knew him as "Zillu" weighs strongly against the credibility of his claim that he deliberately omitted that nickname.

The combination of Alam's failure to satisfactorily explain the failure of the two declarants to recognize his name, his internally contradictory testimony, Alam's "nickname testimony," and the evidence that Alam had lied about holding a specific political office which was held by someone else, justifies the IJ's adverse credibility determination. We conclude that the BIA properly determined that the record reflected these discrepancies which Alam failed to rectify, and therefore properly upheld the IJ's adverse credibility determination. Thus, there was no error in concluding that Alam was not credible.

B.

6

Alam next argues that he produced sufficient evidence to support a finding that he entered the United States through Miami on November 8, 2001 with a picture substituted passport and was subjected to inspection upon his entry. Alam therefore contends that he is eligible for adjustment of status because he is the beneficiary of a successful I-130 visa application because of his marriage to a United States citizen. The IJ held, the BIA affirmed, and we now agree that Alam is ineligible for adjustment of status because he has not proven that he was inspected upon entry to the United States. An alien is eligible for adjustment of status only if he "was inspected and admitted or paroled into the United States," 8 U.S.C. § 1255(a), and Alam has not introduced sufficient or credible evidence to support a finding that he was inspected upon entry.

Uncorroborated testimony from a non-credible witness, which Alam was held to be, is not "reasonable, substantial, and probative evidence." Elias-Zacarias., supra, 502 U.S. at 481. Because there is no evidence other than Alam's uncorroborated testimony, let alone substantial evidence, to support a finding that Alam was inspected upon entry to the United States, he is ineligible for adjustment of status under 8 U.S.C. § 1255(a).

IV.

Because we conclude that there was no error in the adverse credibility determination against Alam, and that there was no substantial evidence to establish that he was inspected upon entry to the United States, we will affirm the BIA's dismissal of Alam's appeal.